**AFFIRM; and Opinion Filed April 30, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-11-00860-CV

**JAMES HAIRSTON, INDIVIDUALLY AND NEXT FRIEND OF EMILY HAIRSTON, A MINOR, Appellants**

**V.**

**SOUTHERN METHODIST UNIVERSITY AND BRENT ERWIN, Appellees**

**On Appeal from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. 10-03253-C**

## OPINION

Before Justices Bridges, O'Neill, and Murphy
Opinion by Justice Murphy

Emily Hairston and her father, James Hairston,[1] appeal the trial court's summary judgment in favor of Southern Methodist University and Brent Erwin on Hairston's claims for financial aid. In four general issues, Hairston contends fact issues exist precluding summary judgment and SMU[2] failed to establish its affirmative defense of accord and satisfaction. We affirm.

## BACKGROUND

Hairston's allegations are based on claims SMU, which is a private university located in Dallas, Texas, reneged on a promise to provide her scholarships. Hairston testified she first met

---

[1] Hairston admits on appeal that her father has no independent claims for recovery. Accordingly, references to Hairston include Emily only.

[2] No independent claims are asserted against Erwin; references to SMU as the party to this action include Erwin.

Erwin, who was the head coach of SMU's women's soccer team, in May of 2007. She was a sophomore at Highland Park High School at the time, and her soccer coach told her she should contact Erwin because SMU was interested in recruiting her.

Hairston, along with her father and her godmother, made an unofficial visit to SMU to tour the campus in May 2007. They met with Erwin after the tour, and he informed Hairston and her family that he would like her to come to SMU. Hairston contends Erwin verbally offered her a "100%" scholarship during that meeting. Whether Erwin made the verbal offer is a disputed issue in this case. What is not disputed, however, is that Hairston never received a written statement or agreement regarding a scholarship.

After the May 2007 meeting, Hairston and Erwin continued to communicate throughout Hairston's high school career, primarily through email. The emails included discussions of games, workouts, recruitment of other soccer players, and encouragement for Hairston to graduate early and enroll in SMU's spring 2009 semester. None of those conversations mentioned financial or scholarship aid.

Hairston graduated from high school early, enrolled in SMU's spring 2009 semester, and joined the women's soccer team. In February of that semester, she received a call from SMU's business office informing her approximately $25,000 in tuition and fees were owing for that semester. Hairston testified she was devastated and immediately contacted Erwin, who advised her no scholarship or financial aid was available.

Hairston's father immediately complained to Steve Orsini, SMU's athletic director. Following a meeting with Orsini, Hairston and her father signed an April 11, 2009 agreement with SMU in which she received $17,585 in financial assistance for the spring 2009 academic semester. Pursuant to the agreement, Hairston acknowledged receipt of $17,585 and that "this scholarship is for the spring 2009 academic semester only." The agreement contained the further

–2–

notation that "for the 2009–2010 academic year, I understand I will not be receiving athletic aid."

Just over a year later, Hairston brought the underlying lawsuit, alleging fraud in the inducement, "detrimental reliance," breach of contract, and intentional infliction of emotional distress; she also alleged breach of duty of good faith and fair dealing against the school. SMU denied the allegations and asserted affirmative defenses under the statute of frauds and for accord and satisfaction and also filed a counterclaim for past due fees and tuition.

SMU filed a traditional summary-judgment motion, which it later amended, on the grounds: (1) Hairston's father was an improper party because he had no justiciable claim and Hairston was not a minor at the time suit was filed; (2) all of Hairston's claims were precluded by the statute of frauds; (3) the April 11, 2009 agreement signed by Hairston and her father constituted an accord and satisfaction of the alleged oral agreement to provide financial assistance; and (4) Hairston's claims for intentional infliction of emotion distress did not rise to the level of extreme and outrageous conduct and were based on the same alleged oral agreement as her other claims. After allowing additional time for supplemental briefing regarding contract interpretation issues, the trial court held a final hearing and granted SMU's summary-judgment motion in its entirety. SMU then dismissed its counterclaim, rendering the trial court's order final and appealable.

## STANDARD OF REVIEW

We review summary judgments under an established de novo standard of review. *Mid-Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). SMU, as the movant for traditional summary judgment, had the burden of showing that no genuine issues of material fact exist and it was entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994). Where, as here, SMU as the movant

requested summary judgment on both its affirmative defenses and on Hairston's claims, we determine whether it conclusively disproved at least one element of Hairston's claims or conclusively proved every element of its affirmative defenses. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982).

## DISCUSSION

Hairston brings four general issues on appeal asserting she raised fact issues on her claims and that SMU failed to establish its defense of accord and satisfaction. In those issues and her argument, however, she makes no reference to her underlying claims for fraudulent inducement or breach of duty of good faith and fair dealing; SMU does address those issues in its briefing. Accordingly, to the extent the trial court's summary judgment was based on those two claims for relief, we will not disturb the trial court's ruling. In doing so, we do not express an opinion as to the merits of SMU's motion regarding those claims. Additionally, Hairston has acknowledged her father has no independent grounds for recovery. Accordingly, the issues before us on appeal involve the propriety of summary judgment on Hairston's claim for intentional infliction of emotional distress and SMU's statute of frauds and accord and satisfaction defenses.

### Intentional Infliction of Emotional Distress

We first address Hairston's claim for intentional infliction of emotional distress, which SMU contends it legally negated. Hairston alleged under this cause of action that SMU intentionally, recklessly, and without basis harassed, ridiculed, and maliciously inflicted emotional distress on her by causing her to lose her financial aid and athletic scholarship and forego financial aid from others.

Intentional infliction of emotional distress is a "gap-filler tort," judicially created to allow recovery where emotional distress is inflicted in such an unusual manner there are no other theories of redress. *See Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). To recover on this claim, Hairston must establish that: (1) SMU acted intentionally or recklessly; (2) SMU's conduct was extreme and outrageous; (3) SMU's actions caused Hairston emotional distress; and (4) the resulting emotional distress was severe. *See Zeltwanger*, 144 S.W.3d at 445. Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (internal citations omitted)). Meritorious claims for intentional infliction of emotional distress are rare because "most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous." *Kroger Tex. Ltd. P'ship v. Subaru*, 216 S.W.3d 788, 796 (Tex. 2006).

We must determine, in the first instance, whether SMU's conduct was extreme and outrageous. *Zeltwanger*, 144 S.W.3d at 445. Intent that is tortious, malicious, or even criminal, is insufficient to meet the threshold if SMU's conduct itself is not extreme and outrageous. *See Toles v. Toles*, 113 S.W.3d 899, 921 (Tex. App.—Dallas 2003, no pet.). Additionally, Hairston cannot recover on a claim for intentional infliction of emotional distress if her risk of emotional distress is incidental to SMU's commission of another tort. *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998). Whether Hairston is able to recover on her primary theories is irrelevant to the analysis. *Zeltwanger*, 144 S.W.3d at 447–48.

Viewing Hairston's evidence and all inferences in her favor, Erwin verbally offered Hairston a full scholarship to SMU. He actively recruited her and obtained her assistance in recruiting other women soccer players. Erwin told her and her father in May 2007 that SMU was

going to provide athletic scholarship money and supplement that with academic and character scholarships to make sure she was "totally covered." Hairston never received any written statement mentioning or detailing the scholarship, but Erwin continued to communicate with Hairston throughout her high school career, primarily through emails. In reliance on Erwin's offer of financial assistance, Hairston graduated from high school early, enrolled in SMU, and joined the women's soccer team. She had other opportunities but decided to forego those in favor of SMU. It was only after she enrolled and joined the women's soccer team that she learned she had no scholarship or financial aid and owed approximately $25,000 in tuition and fees for the semester.

Hairston's risk of emotional distress from this conduct is incidental to her other claims that are based on alleged breaches of legal duties. Additionally, the conduct does not meet the threshold of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Twyman*, 855 S.W.2d at 621. Accepting Hairston's evidence as true, she and her family were devastated. The evidence, however, does not meet the legal test for a claim of intentional infliction of emotional distress. Although Hairston argues this was not an isolated incident and Erwin displayed the same conduct toward other young women he recruited to play soccer for SMU, those incidents have no legal significance to Hairston's claim. We therefore overrule Hairston's issue on this claim.

### Statute of Frauds

Hairston's primary theory of recovery against SMU is for breach of an oral agreement to provide her scholarships to attend SMU and play on the women's soccer team. SMU moved for summary judgment on this claim based on its affirmative defense the oral agreement is barred by the statute of frauds. Specifically, SMU contends (1) the parties could not perform the contract

within a year of its making, (2) the contract is not in writing and signed by SMU, and (3) no exceptions to the statute of frauds apply here.

The statute of frauds exists to prevent fraud and perjury in certain kinds of transactions by requiring agreements to be in writing and signed by the parties. *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001); RESTATEMENT (SECOND) OF CONTRACTS § 131 cmt. c (1981). It is an affirmative defense in a breach of contract suit and renders a contract that falls within its purview unenforceable. *See* TEX. R. CIV. P. 94; TEX. BUS. & COM. CODE ANN. § 26.01(a) (West 2009); *see also S & I Mgmt., Inc. v. Sungju Choi*, 331 S.W.3d 849, 854 (Tex. App.—Dallas 2011, no pet.).

The statute of frauds applies to agreements that are "not to be performed within one year from the date of making the agreement." TEX. BUS. & COM. CODE ANN. § 26.01(b)(6). Thus, when a promise or agreement, either by its terms or by the nature of the required acts, cannot be completed within one year, it falls within the statute of frauds and is not enforceable unless it is in writing and signed by the person to be charged. *See id.* § 26.01(a), (b)(6); *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982) (per curiam). If the agreement is capable of being performed within one year, it is not precluded by the statute of frauds. *See Gerstacker v. Blum Consulting Eng'rs, Inc.*, 884 S.W.2d 845, 849 (Tex. App.—Dallas 1994, writ denied).

The question of whether an agreement falls within the statute of frauds is one of law. *See Bratcher v. Dozier*, 346 S.W.2d 795, 796 (Tex. 1961); *Biko v. Siemens Corp.*, 246 S.W.3d 148, 159 (Tex. App.—Dallas 2007, pet. denied). Yet the question of whether an exception to the statute of frauds applies is generally a question of fact. *See Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 705 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

Courts use two points of reference in determining whether an agreement is capable of being performed within one year: (1) the time of making the contract and (2) the time when

performance is to be completed. *See* TEX. BUS. & COM. CODE ANN. § 26.01(b)(6); *Young v. Ward*, 917 S.W.2d 506, 508 (Tex. App.—Waco 1996, no writ) (to measure contract duration for statute-of-frauds purposes, the "court simply compares the date of the agreement to the date when the performance under the agreement is to be completed"). If there is a year or more between those two reference points, a writing is required to render the agreement enforceable. *Young*, 917 S.W.2d at 508.

Hairston alleged in her original petition she met with Erwin in May 2007 and he "stated that SMU would offer [Hairston] a 100% scholarship and 'full ride.'" A portion "would be athletic and the balance would be academic and character scholarships." She asserts she accepted Erwin's offer on May 6, 2007. Her breach of contract claim is based on these allegations.

Before examining the merits of SMU's statute of frauds defense, we must address a dispute between Hairston and SMU regarding how many years Hairston claims the scholarship covered. That is, what were the terms of the oral agreement forming the basis of Hairston's breach of contract claim? SMU claims that Hairston alleged the financial aid would "completely take care of [her] tuition and fees for four years of attendance at SMU." It cites to the father's deposition testimony in which he states he would "like all four years of tuition" in damages and Hairston's testimony that she was offered a 100% scholarship. Hairston argues that SMU "take[s] great liberty with the facts." She claims she sued alleging that SMU breached a contract but did not allege the contract was for all "'four years' of financial aid." She argues that her original petition does not refer to a four-year scholarship.

Hairston alleges in her original petition that SMU would offer her a "100% scholarship" and a "full ride"; she does not state explicitly the scholarship would be for four years. Hairston's appellate brief uses similar language and also does not specify a four-year scholarship. Hairston

did, however, state in her supplemental response to SMU's summary-judgment motion that Erwin misrepresented to Emily she would "receive a 'full ride' for all four years if she committed to SMU to play women's soccer." Hairston does not otherwise clarify how many years she contends the scholarship would cover.

Resolution of the length of time covered by the scholarship claimed by Hairston does not impact our final disposition of the statute of frauds issue. We therefore address Hairston's breach of contract claim under both scenarios. To the extent Hairston claims the scholarship was for four years, the agreement could not be performed within a year of its acceptance and a signed writing was required. To the extent, however, Hairston claims the scholarship was not intended to be for four years, that agreement also could not be performed within a year. Specifically, Hairston was a high-school sophomore when she claims she accepted the offer in May 2007; she did not enroll at SMU until the spring 2009 semester—approximately one and a half years later. Similarly, the agreement would not be capable of being performed within one year of May 2007 because Hairston could not enroll at SMU until she completed high school. She does not suggest she could have graduated after her sophomore year. The statute of frauds thus applied to the agreement regardless of whether it was for four years or less.

Hairston also argues the statute of frauds does not bar her breach of contract claim because the agreement was "reaffirmed" or "re-offered" on February 2, 2009, while she was attending SMU. She reasons that the February 2 reaffirmation makes the agreement capable of being performed within one year (assuming she is not relying an agreement for a full scholarship). The sole basis for her argument is an article published in SMU's school newspaper on that date announcing the signing of twelve new participants on the women's soccer team, including Hairston. That article makes no mention of any scholarship, it does not constitute a written agreement, and it does not raise a fact issue regarding SMU's statute of frauds defense.

–9–

**Promissory Estoppel and Partial Performance Exceptions to the Statute of Frauds**

Hairston also invokes two equitable exceptions to the statute of frauds—promissory estoppel and partial performance—in an effort to save her breach of contract claim. In support of her promissory estoppel argument, she relies on *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934 (Tex.1972) (op. on re'g). Under *"Moore" Burger*, the burden is on Hairston to produce evidence raising a fact issue concerning her promissory estoppel defense to application of the statute of frauds. *Id.* at 936–37. The elements of promissory estoppel that would allow the enforcement of an otherwise unenforceable oral agreement are that (1) the promisor should have expected its promise would lead the promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid injustice. *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982); *see also Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 438 (Tex. App.—Dallas 2002, pet. denied).

To invoke the application of promissory estoppel where there is an oral promise to sign an agreement, as in this case, the agreement that is the subject of the promise must comply with the statute of frauds. *"Moore" Burger*, 492 S.W.2d at 940; *Breezevale*, 82 S.W.3d at 438. That is, the agreement must be in writing at the time of the oral promise to sign it. *Breezevale*, 82 S.W.3d at 438.

Hairston offers no evidence suggesting a written scholarship agreement existed in May 2007 when Hairston claims Erwin orally promised her a scholarship. Instead, she states that "Erwin represented that such agreement would be signed later." That oral representation, however, would not satisfy the promissory estoppel requirement of a writing. Hairston also asserts the February 2009 report in the school newspaper—that the SMU women's soccer team had announced "12 new signees," which included Hairston—satisfies her burden of showing an existing written agreement. Besides the article's lack of reference to a scholarship and its failure

as a written agreement, Hairston admits she had already enrolled and was attending class by the time of this article. The article did not exist at the time of the May 2007 oral representation. Accordingly, Hairston failed to raise a fact issue regarding the promissory estoppel exception to the statute of frauds.

Hairston also relies on partial performance as an equitable exception to the statute of frauds, citing *Carmack v. Beltway Dev. Co.*, 701 S.W.2d 37, 40 (Tex. App.—Dallas 1985, no writ) (part performance is a "well-recognized exception" to the statute of frauds). She argues under this exception she is entitled to "one full year's worth of Financial Aid to cover her costs."

Under the partial performance exception to the statute of frauds, contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud. *Breezevale*, 82 S.W.3d at 439. The partial performance must be unequivocally referable to the agreement and corroborative of the fact that a contract actually was made. *Id.*; *Holloway v. Dekkers*, 380 S.W.3d 315, 324 (Tex. App.—Dallas 2012, no pet.). The performance a party relies on to remove a parol agreement from the statute of frauds "must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced." *Breezevale*, 82 S.W.3d at 439–40. Without such precision, the acts of performance do not tend to prove the existence of the parol agreement sought to be enforced. *Id.* at 440. We need not reach the question of whether Hairston satisfied the requirements for showing the partial performance exception to the statute of frauds because her claim to enforce a one-year scholarship is barred by SMU's accord and satisfaction defense.

### Accord and Satisfaction

SMU sought summary judgment on its accord and satisfaction defense. Specifically, it argued the April 11, 2009 written agreement signed by Hairston and her father constitutes an

–11–

accord and satisfaction of any oral promise to provide financial assistance, precluding Hairston from claiming any benefit under the oral promise. The accord and satisfaction defense rests upon a contract, express or implied, in which the parties agree to the discharge of an existing obligation by means of a lesser payment tendered and accepted. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 863 (Tex. 2000); *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex. 1969).

SMU, as the movant on this defense, was required to establish the existence of a dispute and an unmistakable communication to Hairston that tender of a reduced sum was upon the condition that acceptance would satisfy the underlying obligation. *See Lopez*, 22 S.W.3d at 863. SMU and Hairston must have agreed, specifically and intentionally, to the discharge of an existing obligation of SMU. *Id.* "In other words, to prevail on its defense, [SMU] was required to present summary judgment evidence that [Hairston] disputed [the denial of a scholarship] and specifically and intentionally agreed to relinquish any claims [she] might have had against [SMU]." *Id.*

SMU argues it met its burden based on the 2009 written agreement signed by Hairston and her father. The agreement referenced the 2009–2010 academic year, providing:

RE: Scholarship Agreement for Academic Semester Spring 2009

I, Emily Hairston, understand and agree that I will be given an athletic scholarship of 17,585.00 for the spring 2009 academic semester. I also understand and agree that this scholarship is for the spring 2009 academic semester <u>only</u>. Also, for the 2009-2010 academic year, I understand I will not be receiving athletic aid.

This evidence establishes conclusively SMU's affirmative defense of accord and satisfaction as to the 2009–2010 academic year. Thus, Hairston's claim that she partially performed and was entitled to at least one year's worth of financial aid is precluded by SMU's accord and satisfaction defense.

Hairston's response to SMU's accord and satisfaction defense is that there is no evidence the amount paid was in full satisfaction of the entire claim. We agree the evidence does not conclusively establish an accord and satisfaction of a four-year scholarship. Accordingly, to the extent the trial court granted summary on that basis, the judgment would have been in error. Based on our resolution of SMU's statute of frauds defense, however, such error does not affect our disposition of this appeal. We overrule Hairston's issues regarding the statute of frauds and accord and satisfaction, to the extent any dispute was resolved as to the 2009–2010 academic year.

## CONCLUSION

Regardless of whether Hairston is alleging her May 2007 oral agreement for a 100% tuition scholarship was for four years or for the 2009–2010 academic year, that agreement is precluded by the statute of frauds because it could not be performed within a year of May 2007. To the extent Hairston claims her partial performance removes her claim for 2009–2010 financial aid from the statute of frauds, those claims are barred by the defense of accord and satisfaction. She also has failed to show a writing existed that would satisfy the promissory estoppel exception to the statute of frauds. Finally, she has not presented a fact issue on her claim of intentional infliction of emotional distress because her risk of emotional distress is based on the same conduct giving rise to her other claims and the conduct does not meet the threshold legal test for extreme or outrageous conduct. We therefore affirm the trial court's judgment.

/Mary Murphy/
MARY MURPHY
JUSTICE

110860F.P05

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JAMES HAIRSTON, INDIVIDUALLY
AND NEXT FRIEND OF EMILY
HAIRSTON, A MINOR, Appellants

No. 05-11-00860-CV      V.

SOUTHERN METHODIST UNIVERSITY
AND BRENT ERWIN, Appellees

On Appeal from the County Court at Law
No. 3, Dallas County, Texas
Trial Court Cause No. 10-03253-C.
Opinion delivered by Justice Murphy.
Justices Bridges and O'Neill participating.

    In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

    It is **ORDERED** that appellees SOUTHERN METHODIST UNIVERSITY and BRENT ERWIN recover their costs of this appeal from appellants JAMES HAIRSTON and EMILY HAIRSTON.

Judgment entered this 30th day of April, 2013.

/Mary Murphy/

MARY MURPHY
JUSTICE