**AFFIRM in Part, REVERSE in Part, and REMAND; Opinion Filed May 15, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00662-CV

**WENDY YEE, Appellant**
**V.**
**ANJI TECHNOLOGIES, LLC, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-03706-2017**

# MEMORANDUM OPINION

Before Justices Myers, Molberg, and Carlyle
Opinion by Justice Molberg

Wendy Yee was employed by Anji Technologies, LLC (Anji) as a senior vice president. After Anji terminated her employment, Yee sued, claiming she was entitled to (1) fifty percent of Anji's profits from 2012 through 2015 under an oral partnership agreement (the partnership agreement) and (2) fifty percent of Anji's profits from a specific contract under an oral agreement made when her employment was terminated (the Alcara agreement). Yee asserted claims for breach of contract, promissory estoppel, breach of fiduciary duty, and quantum meruit.

Anji moved for summary judgment on all of Yee's claims on the ground the partnership agreement did not comply with the statute of frauds. The trial court granted summary judgment on all of Yee's claims.

In her first two issues, Yee argues the trial court erred by granting summary judgment in favor of Anji because Anji failed to conclusively establish the statute of frauds applies to the oral agreements and there was a genuine issue of material fact regarding the applicability of the partial performance exception to the statute of frauds. In a third issue, Yee contends the trial court erred by granting summary judgment on her quantum meruit claim because the statute of frauds is not a defense to that claim.

We conclude Anji conclusively established the statute of frauds bars Yee's claims based on the partnership agreement and that Yee failed to raise a genuine issue of material fact on the applicability of the partial performance exception to the statute of frauds. Accordingly, we affirm the trial court's summary judgment on Yee's claims for breach of fiduciary duty and breach of contract to the extent that claim is based on breach of the partnership agreement.

However, because the statute of frauds does not bar either Yee's quantum meruit or promissory estoppel claims and Anji did not conclusively establish the Alcara agreement is subject to the statute of frauds, we reverse the trial court's summary judgment on Yee's quantum meruit and promissory claims and on Yee's breach of contract claim to the extent that claim is based on breach of the Alcara agreement.

**Background**

Anji was formed in 2007 by Rajesh Tiwari and his wife, Madhu Tiwari. Madhu owns sixty percent of Anji and Rajesh owns the remaining forty percent of the company. Anji is a management and technology consulting firm and provides information technology solutions, application development, and total project management consulting services to its clients.

Yee is a senior information technology management professional with extensive experience in the telecommunications, logistic-warehousing, and financial industries. According to Yee, Rajesh approached her in January 2012 about forming a partnership with Anji to provide

technology consulting services in software development and testing. Pursuant to the partnership agreement, Yee and Rajesh would split the responsibilities of the partnership "50/50." Specifically, Yee would manage the daily operations, provide onsite client software testing services, and present Anji's services to potential clients, while Rajesh would handle all aspects of software development and technical support. Both Anji and Yee would receive fifty percent of the partnership's profits

The partnership agreement was not in writing and, according to Yee, did not set an end date. In Yee's opinion, the partnership agreement "could have been performed and terminated within the first year."

In March 2012, Rajesh, Yee, and Yee's husband, Evon Mattison, had at least two meetings to discuss a potential partnership between Anji and Epsilon Service Delivery (Epsilon), a company owned by Mattison. Yee prepared notes from the meetings which indicated she was responsible for developing business strategies for the proposed partnership. Yee emailed the meeting notes to both Rajesh and Mattison. Rajesh did not request that Yee make any changes to the notes.

Anji and Epsilon did not reach an agreement on the proposed partnership, and Mattison "disengaged from all discussion" with Anji. Yee and Mattison then "made the decision for [Yee] to move forward with the partnership with Anji." According to Yee, beginning in March 2012, she "began working 100% on developing" Anji's business.

On October 15, 2012, Yee agreed to "be added to [Anji's] payroll" as a senior vice president with an annual salary of $90,000. It was Yee's understanding that Rajesh and Madhu were also being paid $90,000 a year by Anji. According to Yee, her salary at Anji was significantly less than what she had been making as an independent consultant, but she agreed to a "below-market salary" because Anji represented it would help the company if she was added to the payroll register. Rajesh indicated to Yee that the difference between her "client billed amount" and her

salary would be her "financial equity contribution" to the partnership. Based on the additional compensation that she believed she would receive under the partnership agreement, Yee refused offers to continue working as an independent contractor.

Yee understood that any profits of the partnership would initially be reinvested in order to grow Anji's business and to show a strong bank balance to potential new clients. She, therefore, made an "initial 5-year commitment" to the business. She described this commitment as a "unilateral personal guideline" and not part of the partnership terms. Based on this five-year commitment, Yee did not request any distribution of the partnership's profits, but relied on Anji's representation that she would be paid.

On February 23, 2016, Rajesh terminated Yee's employment with Anji. Yee then requested payment under the partnership agreement. Anji did not make the requested payment. However, according to Yee, when Rajesh terminated her employment, he orally agreed to pay her fifty percent of the profits on the Alcara project which had just "closed out."

Yee sued Anji, asserting claims for breach of contract, promissory estoppel, breach of fiduciary duty, and quantum meruit. Yee alleged that "in reliance on the partnership agreement," she had performed work for Anji for which she was not compensated and had used her personal funds to pay for Anji's office expenses and certain client non-billable client expenses. Yee sought to recover approximately $3,500,000, consisting of fifty percent of Anji's profits between 2012 and 2015 and fifty percent of Anji's profits on the Alcara project, and approximately $41,000 in unreimbursed expenses and costs.

Anji filed a motion for summary judgment based on the affirmative defense of the statute of frauds. Anji specifically argued there was no written agreement and the partnership agreement could not have been performed within one year. The trial court granted summary judgment for Anji on all of Yee's claims.

## Standard of Review

We review a trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). To be entitled to a traditional summary judgment, the movant must show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan*, 555 S.W.3d at 84.

A defendant moving for traditional summary judgment on an affirmative defense must conclusively establish each essential element of the defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). If the defendant's motion and summary judgment evidence establishes its right to judgment as a matter of law, the burden shifts to the party opposing the motion to raise a genuine issue of material fact or show the defendant's legal position is unsound. *G.C. Bldgs., Inc. v. RGS Contractors, Inc.*, 188 S.W.3d 739, 741–42 (Tex. App.—Dallas 2006, no pet.).

In reviewing a traditional summary judgment, we consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833 (Tex. 2018) (per curiam). We credit evidence favorable to the nonmovant if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.,* 521 S.W.3d 766, 774 (Tex. 2017).

## Quantum Meruit

In her third issue, Yee contends the trial court erred by granting summary judgment on her quantum meruit claim because that claim is not subject to the statute of frauds. Anji concedes the trial court improperly granted summary judgment on Yee's quantum meruit claim based on the statute of frauds.

"Quantum meruit is an equitable remedy that is 'based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (orig. proceeding)). A claim for quantum meruit "does not arise out of a contract, but is independent of it." *Vortt Expl. Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). The purpose of the doctrine is to prevent a party from being unjustly enriched by retaining the benefit of a party's performance without paying anything in return. *Hill*, 544 S.W.3d at 732. Under a quantum meruit claim, a party may recover the reasonable value of the work performed and the materials furnished. *Id.* at 733.

Here, Yee seeks to recover in quantum meruit only the reasonable value of the goods and services she provided to Anji. The fact the partnership agreement may be unenforceable under the statute of frauds does not preclude this claim. *See id.* at 735; *Campbell v. Nw. Nat'l Life Ins. Co.*, 573 S.W.2d 496, 498 (Tex. 1978) (concluding fact contract was enforceable because of the statute of frauds did not preclude recovery in quantum meriut for value of goods and services provided by plaintiff).

Because the statute of frauds does not preclude Yee's quantum meruit claim, the trial court erred by granting Anji's motion for summary judgment on that claim. We resolve Yee's third issue in her favor.

### Breach of Contract, Breach of Fiduciary Duty, and Promissory Estoppel

In her first two issues, Yee argues the trial court erred by granting summary judgment on her breach of contract, breach of fiduciary duty, and promissory estoppel claims because Anji failed to conclusively establish the statute of frauds applies to the oral agreements and, if the statute

of frauds applies, there is a genuine issue of material fact regarding the applicability of an exception to the statute.[1]

*Statute of Frauds*

The purpose of the statute of frauds is to "remove uncertainty, prevent fraudulent claims, and reduce litigation" by requiring that certain agreements be in writing and signed by the parties. *Hill*, 544 S.W.3d at 735; *see also Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001). The statute of frauds is an affirmative defense in a breach of contract suit and renders a contract that falls within its purview unenforceable. TEX. BUS. & COM. CODE ANN. § 26.01(a); *S&I Mgmt., Inc. v. Choi*, 331 S.W.3d 849, 854 (Tex. App.—Dallas 2011, no pet.). Whether an agreement falls within the statute of frauds is a question of law that we review de novo. *Hill*, 544 S.W.3d at 733.

An agreement that cannot be completed within one year is not enforceable unless it is in writing and signed by the person to be charged. TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(6); *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982) (per curiam). "For the one-year provision to apply, performance within one year must be impossible." *Abatement Inc. v. Williams*, 324 S.W.3d 858, 860 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *see also Thunder Rose Enters., Inc. v. Kirk*, No. 13-15-00431-CV, 2017 WL 2172468, at *8 (Tex. App.—Corpus Christi-Edinburg Apr. 20, 2017, pet. denied) (mem. op.) ("A contract that could *possibly* be performed within a year, however improbable performance within one year may be, does not fall within the statute of frauds."). If the agreement is capable of being performed within one year, it is not precluded by the statute of frauds. *Hairston v. S. Methodist Univ.*, 441 S.W.3d 327, 334 (Tex. App.—Dallas 2013, pet. denied).

---

[1] Yee also raised this argument as to her quantum meruit claim. Based on our resolution of Yee's third issue, we need not address her quantum meruit claim further. *See* TEX. R. APP. P. 47.1.

In determining whether an agreement is capable of being performed in one year we compare the date of the agreement to the date when the performance is to be completed. *Id.* This analysis is complicated somewhat when the agreement does not state the time for performance and does not indicate that it cannot be performed within a year. *Gano v. Jamail*, 678 S.W.2d 152, 153 (Tex. App.—Houston [14th Dist.] 1984, no writ). Although such agreements generally do not fall within the statute of frauds, *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775–76 (Tex. 1974), when the agreement cannot be performed within one year because of its terms or the nature of the required acts, the statute of frauds applies and the agreement must be in writing. *Niday*, 643 S.W.2d at 920.

In considering whether an oral agreement that does not explicitly mention a time for performance falls within the statute of frauds, we must determine whether the parties intended to complete the agreement within a year. *Metromarketing Servs., Inc. v. HTT Headwear, Ltd.*, 15 S.W.3d 190, 195 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Hall v. Hall*, 308 S.W.2d 12, 16 (Tex. 1957)). In conducting our analysis, we look to the intended performance, not the defeat, of the agreement. *Wewerka v. Lantron*, 174 S.W.2d 630, 633–34 (Tex. App.—Amarillo 1943, writ ref'd w.o.m.); *see also Metromarketing Servs., Inc.*, 15 S.W.3d at 196 (noting "reasonable time" for performance is based on circumstances surrounding adoption of agreement, the situation of the parties, and the subject matter of the contract).[2]

The duration of the agreement "may properly be implied from extrinsic evidence." *Niday*, 643 S.W.2d at 920. If the evidence conclusively proves the alleged oral agreement cannot be completed within one year, the agreement violates the statute as a matter of law. *Id.*

---

[2] Termination of a contract may occur in the absence of completed performance, but that termination does not affect the applicability of the statute of frauds to the contract. *Westside Wrecker Serv., Inc. v. Skafi*, 361 S.W.3d 153, 164 n.12 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (citing *Gilliam v. Kouchoucos*, 340 S.W.2d 27, 28–29 (Tex. 1960); *Young v. Ward*, 917 S.W.2d 506, 510–11 (Tex. App.—Waco 1996, no writ).

*Breach of Partnership Agreement*

Anji moved for summary judgment on the ground the partnership agreement could not be performed in one year and, therefore, was required to be in writing. Yee's summary judgment evidence established that, by at least March 2012, she and Anji had entered into an oral partnership agreement pursuant to which (1) she would manage the day-to-day operations of Anji, provide onsite client software testing services, and present Anji's services to potential clients, (2) Rajesh would be responsible for all aspects of software and technical support, and (3) she and Anji would each receive fifty percent of the profits. At the time the agreement was made, Yee anticipated the partnership would last longer than one year, knew any profits would be re-invested into the partnership, and personally decided not to seek any distribution of profits for a period of five years.

Anji had been in business for five years at the time of the partnership agreement and the purpose of the partnership was to increase Anji's existing client base and workforce. There is no evidence either Anji or Yee thought this purpose could be completed within one year, and all the available evidence indicated they anticipated it would take much longer to perform the partnership agreement. Accordingly, both the extrinsic evidence and the nature of the required acts establish that full performance of the partnership agreement could not be completed within one year. *See Chapman v. Arfeen*, No. 09-16-00272-CV, 2018 WL 4139001, at *11 (Tex. App.—Beaumont Aug. 30, 2018, pet. denied) (mem. op.) (concluding, based on terms of agreement, that parties did not contemplate undertaking would be completed within a year); *Gano*, 678 S.W.2d at 154 (concluding oral agreement between lawyers could not be performed in less than a year given the nature of the business and based on testimony by the lawyer seeking to enforce the agreement). Therefore, the partnership agreement falls within the statute of frauds and was required to be in writing in order to be enforceable. TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(6).

We conclude Anji met its burden of establishing the statute of frauds applies to Yee's claims for breach of the partnership agreement and breach of fiduciary duties arising from that agreement.[3]

*Promissory Estoppel*

Anji's sole ground for summary judgment on Yee's promissory estoppel claim was that the statute of frauds bars the enforcement of the partnership agreement. However, "[w]hether the statute of frauds bars recovery for a non-contract claim depends on the nature of the damages the plaintiff seeks to recover." *Hill*, 544 S.W.3d at 734.

Pursuant to her promissory estoppel claim, Yee sought to recover the out-of-pocket costs she incurred in reliance on Anji's promise of a partnership.[4] By seeking to recover these costs, Yee is not attempting to enforce the otherwise unenforceable partnership agreement. *See Haase*, 62 S.W.3d at 799. Accordingly, Yee's promissory estoppel claim does not contravene the statute of frauds. *See id.*; *see also Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007) (per curiam) (noting that statute of frauds does not bar recovery for out-of-pocket damages for fraud, and if plaintiff had sought such restitution-based damages, his suit would have been viable).

*Breach of Alcara Agreement*

In her petition, Yee specifically alleged that, on February 23, 2016, Rajesh agreed to pay her fifty percent of the profits on a project that had just "closed out." In its motion for summary judgment, Anji argued only that the partnership agreement was unenforceable due to the statute of frauds and did not specifically address the Alcara agreement. Further, there is nothing about the

---

[3] *See Victory Park Mobile Home Park v. Booher*, No. 05-12-01057-CV, 2014 WL 1017512, at *5 (Tex. App.— Dallas Feb. 26, 2014, no pet.) (mem. op.) (affirming judgment that appellant take nothing on breach of fiduciary duty claim in which alleged duty arose from partnership agreement that was unenforceable under the statute of frauds).

[4] Promissory estoppel is an exception to the statute of frauds. *Trammel Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997); *Branch Banking & Trust Co. v. Seideman*, No. 05-17-00381-CV, 2018 WL 3062450, at *15 (Tex. App.—Dallas June 21, 2018, pet. denied) (mem. op.). Yee, however, has argued only that promissory estoppel is a substantive claim that allows her to recover her out-of-pocket costs and does not contend it removes the partnership agreement from the statute of frauds.

terms of the alleged oral agreement to pay Yee fifty percent of the profits from the Alcara project that would suggest it could not be performed within one year. Accordingly, Anji failed to conclusively establish that the statute of frauds applies to Yee's breach of contract claim based on the Alcara agreement.

*Partial Performance Exception to Statute of Frauds*

Yee also contends the partial performance exception to the statute of frauds applies to her claims. Once the defendant conclusively establishes its statute of frauds defense, the burden shifts to the plaintiff to establish an exception that would take the oral agreement out of the statute of frauds. *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 642 (Tex. 2013). Whether an exception to the statute of frauds applies is generally a question of fact. *Hairston*, 441 S.W.3d at 334.

"Under the partial performance exception to the statute of frauds, contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud." *Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 192 (Tex. App.—Dallas 2013, pet. denied). However, the partial performance must be unequivocally referable to the agreement and corroborative of the fact that a contract actually was made. *Id.* at 193; *Holloway v. Dekkers*, 380 S.W.3d 315, 324 (Tex. App.—Dallas 2012, no pet.).

The performance a party relies on to remove an oral agreement from the statute of frauds "must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced." *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439–40 (Tex. App.—Dallas 2002, pet. denied); *see also Hairston*, 441 S.W.3d at 336. Otherwise, the acts of performance relied upon to take an oral agreement out of the statute of frauds "do not tend to prove the existence of the parol agreement relied upon by the plaintiff." *Breezevale Ltd.*, 82 S.W.3d at 440; *see also Berryman's S. Fork, Inc.*, 419 S.W.3d at 193 ("Without such precision, the acts of

–11–

performance do not tend to prove the existence of the parol agreement sought to be enforced."). "If the evidence establishes that the party who performed the act that is alleged to be partial performance could have done so for some reason other than to fulfill obligations under the oral contract, the exception is unavailable." *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 426–27 (Tex. 2015) (per curiam).

Yee first contends that, based on the partnership agreement, she performed work for Anji for which she received no compensation. Yee offers no evidence of when she performed any specific work for Anji for which she was not compensated. However, Anji hired Yee on October 15, 2012, as a senior vice president and paid her an annual salary of $90,000. All work performed by Yee for Anji after October 15, 2012, could have been referable to her duties as senior vice president and not to the partnership agreement. Accordingly, Yee failed to raise a genuine issue of material fact that any work she performed after October 15, 2012, was done with no design other than to fulfill the partnership agreement.

We next consider whether any work Yee performed between March 2012, when she and Mattison decided Yee would "move forward" with a partnership with Anji, and October 15, 2012, when Yee was employed by Anji as a fulltime employee, was unequivocally referable to the partnership agreement. In her affidavit, Yee first stated that, in March 2012 at the end of her "existing contract," she began working "100% on developing Anji" business. Pointing to the minutes of the two meetings relating to the possible formation of an Anji–Epsilon partnership, Yee argues she agreed to work on "business strategies" and Rajesh made no objection to her doing so. However, there is no evidence these "business strategies" were unequivocally related to Yee's partnership with Anji, as opposed to the proposed partnership with Epsilon.

Without specifying a time period, Yee next claims she used her position "on the Frontier Sterling CRM9 conversion project to on-board Anji resources onto [her] team that would not have

been hired otherwise." Yee's interrogatory responses indicate that, as an independent consultant, she was employed at Frontier Communications as a quality assurance manager from 2009 through an unspecified point in 2012. In September 2012, Yee secured an "on-site client role" prior to accepting employment with Anji. Yee worked as a quality assurance manager at Frontier from 2012 through 2013.

Yee did not provide any evidence that she was employed as a quality assurance manager at Frontier between March 2012 and October 15, 2012. Further, even if Yee was employed at Frontier during that time period, there is no evidence any work she performed was to fulfill the partnership agreement rather than her responsibilities as a quality assurance manager at Frontier. Finally, although Yee contends that, while working at Frontier, she performed some after-hours work for Anji, there is no evidence Yee performed this work between March 2012 and October 15, 2012.

Yee also asserts she spent personal funds on Anji's costs and expenses in reliance on the partnership agreement. However, all the claimed expenses set out in Yee's interrogatory responses, other than one week of "living expenses" in October 2012, were incurred after Yee was hired by Anji as a senior vice president. Those expenses, therefore, were incurred in relation to her employment by Anji and were not unequivocally referable to the partnership agreement.

We conclude Yee failed to raise a genuine issue of material fact regarding whether any work she performed or the expenses she incurred were unequivocally referable to the partnership agreement. Accordingly, she failed to raise a genuine issue of the applicability of the partial performance exception to the statute of frauds to her claims. We resolve Yee's second issue against her.

We sustain Yee's first issue, in part, and reverse the trial court's grant of summary judgment on Yee's breach of contract claim based on the Alcara agreement and on Yee's

–13–

promissory estoppel claim.  We overrule Yee's first issue to the extent it challenges the trial court's grant of summary judgment on Yee's claims for breach of the partnership agreement and breach of fiduciary duties arising from that agreement

## Conclusion

We reverse the trial court's summary judgment on Yee's claims based on quantum meruit, promissory estoppel, and breach of the Alcara agreement and remand those claims to the trial court for further proceedings.  In all other respects, the trial court's summary judgment is affirmed.

/Ken Molberg/
KEN MOLBERG
JUSTICE

180662F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WENDY YEE, Appellant

No. 05-18-00662-CV      V.

ANJI TECHNOLOGIES, LLC, Appellee

On Appeal from the 401st Judicial District Court, Collin County, Texas,
Trial Court Cause No. 401-03706-2017.
Opinion delivered by Justice Molberg, Justices Myers and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** the trial court's summary judgment in favor of Anji Technologies, LLC on appellant Wendy Yee's claims for quantum meruit, promissory estoppel, and breach of contract relating to the Alcara project. In all other respects, the trial court's judgment is **AFFIRMED**.

We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 15th day of May 2019.