

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00182-CV

———————————————

GLORIA OWENS, Appellant

V.

GEORGE T. CURRY, TRUSTEE OF THE MILTON C. CURRY & MAMIE W. CURRY REVOCABLE LIVING TRUST, AND CHARLES ESTER CURRY, Appellees

---

On Appeal from County Court at Law No. 1
Tarrant County, Texas
Trial Court No. 2019-008960-1

---

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Gloria Owens sued Appellees George T. Curry, Trustee of the Milton C. Curry and Mamie W. Curry Revocable Living Trust (the Trustee), and Charles Ester Curry (Ms. Curry) relating to a purported sale of real estate located at 4108 Baylor Street in Fort Worth (the Property). Following a bench trial, the trial court signed a take-nothing judgment on Owens's claims, and it awarded attorney's fees to the Trustee and Ms. Curry. In five issues on appeal, Owens complains that the trial court erred by signing the take-nothing judgment and by awarding attorney's fees to the Trustee and Ms. Curry. We will overrule all of Owens's issues except her complaint regarding the awards of attorney's fees, which we will sustain. We will thus affirm the trial court's take-nothing judgment in all respects except as to the awards of attorney's fees, which we will reverse and remand to the trial court for further proceedings consistent with this opinion.

## II. BACKGROUND

In 2008, Ms. Curry's husband, Milton Curry (Mr. Curry), purchased the Property from the City of Fort Worth. On March 1, 2014, Mr. Curry and Owens signed a fill-in-the-blank real estate form titled "Agreement to Sell Real Estate" (the Contract). Owens filled in the blanks on the Contract. The Contract opens with the words:

This Agreement is made on 3/1/14,[1] between Gloria Owens, Seller, of Milton Curry, City of Ft. Worth, State of Texas, and Terrell Tx., Buyer, of [Left Blank], City of [Left Blank], State of [Left Blank]. The Seller now owns the following described real estate, located at [Left Blank], City of [Left Blank], State of [Left Blank]: [Left Blank].

Thus, at least in the opening paragraph of the Contract, Owens is identified as the "Seller," and "Terrell Tx." is identified as the "Buyer." Despite that language, Mr. Curry later signed the Contract as the "Seller," Owens signed the Contract as the "Buyer," and Ms. Curry signed the contract as both the "Witness for Seller" and the "Witness for Buyer."

Notably, the Contract does not provide any identifying information for the real property being conveyed through the Contract.[2] Further, the Contract never lists the address of the Property—4108 Baylor Street in Fort Worth. Despite failing to identify the real property being conveyed, the Contract states, "The Seller will sell this property to the Buyer, free from all claims, liabilities, and indebtedness, unless noted in this Agreement. 3/1/14."

As to the consideration to be paid by the "Buyer" for the undescribed real property, the Contract provides:

The Buyer agrees to pay the Seller the sum of $150,000, which the Seller agrees to accept as full payment. This Agreement, however, is

---

[1]For clarity, we have underlined the portions of the Contract that contain blanks to be filled in by the parties.

[2]As to personal property, the Contract inexplicably provides, "The following personal property is also included in this sale: Gloria Owens."

3

conditional upon the Buyer being able to arrange suitable financing on the following terms at least thirty (30) days prior to the closing date for this Agreement: a mortgage in the amount of [Left Blank], payable in 700 monthly payments, with an annual interest rate of 0 percent.

The Contract states that the purchase price would be paid as follows: (1) an "Earnest deposit (upon signing this Agreement)" of "$10,000," (2) an "Other deposit" of "$0," and (3) "Cash or certified check on closing (subject to any adjustments or prorations on closing)" in the amount of "$10,000."[3] Despite that breakdown of payments only totaling $20,000—and perhaps being duplicative of one another—the Contract reflects a "Total Purchase Price" of "$150,000." The Contract further reflects that the "Seller" acknowledged receiving the "Earnest money deposit of $10,000 from the Buyer."[4] The Contract provides a closing date of "3/1/14" at "1:00 pm." It further reflects that at closing, and "upon payment by the Buyer of the portion of the purchase price then due, the Seller will deliver to Buyer the following documents: . . . ." The Contract then lists several types of documents that could have

---

[3]The Contract later provides, "The following closing costs will be paid by the Seller: Gloria Owens 10,000."

[4]As to that deposit, the Contract states, "If Buyer fails to perform this Agreement, the Seller shall retain this money. If Seller fails to perform this Agreement, this money shall be returned to the Buyer or the Buyer may have the right of specific performance." It later provides, "If Buyer is unable to obtain suitable financing at least thirty (30) days prior to closing, then this money will be returned to the Buyer without penalty or interest."

4

been delivered by the "Seller" at closing, and only one of them, "A Bill of Sale for all personal property," was circled.[5]

The record is unclear as to who lived at the Property following the signing of the Contract.[6] The record does reflect, however, that Mr. Curry died in 2017, and that following his death, the Trustee filed a forcible detainer action against Barbara Owens—Owens's mother—in a Tarrant County justice court. That suit alleged that the Trustee had acquired the Property from Mr. Curry's estate following his death, that Owens's mother had moved onto the Property and that a tenancy-at-will was created, that the Trustee had mailed Owens's mother a written notice to vacate the Property, and that Owens's mother had refused to vacate the Property.

---

[5]Other types of documents that could have been delivered at closing were listed, including "[a] Warranty Deed for the real estate." Those other types of documents, however, were not circled.

[6]During opening statements at trial, Owens's attorney stated that Owens had remodeled the Property and that it was being used "as a boardinghouse, taking people in who are homeless off the street and providing them with housing." During Ms. Curry's opening statement, her attorney told the trial court that Owens "never lived" at the Property. He also indicated that the Property was being used as a "boarding house," where "rent [was charged] to multiple tenants." The Trustee's attorney told the trial court that Owens "does not currently live at [the] [P]roperty nor has she ever lived at the [P]roperty." Such statements by counsel, however, are not evidence. *See Vaccaro v. Raymond James & Assocs., Inc.*, 655 S.W.3d 485, 491 (Tex. App.—Fort Worth 2022, no pet.) ("An attorney's statements are generally not evidence."); *Sutton v. Helwig*, No. 02-12-00525-CV, 2013 WL 6046533, at *5 n.4 (Tex. App.—Fort Worth Nov. 14, 2013, no pet.) (per curiam) (mem. op.) ("[O]pening statements are not evidence."). Thus, it is unclear who lived at the Property following the signing of the Contract.

A month after that forcible detainer action was filed, Owens brought the present lawsuit against the Trustee.[7] Owens later amended her petition to add Ms. Curry as a defendant.[8] In her live petition, Owens raised the following claims, among others: (1) breach of contract, (2) fraud in a real estate transaction, (3) common law fraud, and (4) unjust enrichment. She also sought declarations from the trial court that she was the purchaser of the Property pursuant to the Contract, that she had an equity ownership in the Property, and that she was entitled to possession of the Property. She also requested that the trial court enter an order awarding her fee simple title to the Property, "subject to the outstanding balance due under the [Contract]." The Trustee and Ms. Curry answered Owens's lawsuit, and both raised the statute of frauds as an affirmative defense.

The case proceeded to a one-day bench trial in December 2021. At trial, Ms. Curry was the only witness to testify. Ms. Curry described a meeting that occurred on March 1, 2014, between herself, Mr. Curry, and Owens. She stated that the meeting concerned "4108 Baylor Street"—the Property—and that Owens had wanted to "purchase the [P]roperty." Ms. Curry described the Contract as "an agreement for

---

[7]Owens's live petition states that the forcible detainer action was at some point abated.

[8]At trial, the parties stipulated that the Milton C. Curry and Mamie W. Curry Revocable Living Trust and Ms. Curry each owned a half portion of Mr. Curry's interest in the Property.

[Owens] to purchase the [P]roperty."[9]  When asked whether the Contract referred to 4108 Baylor Street in Fort Worth, Ms. Curry said, "Yes," reasoning, "[T]hat's the house we were selling to her."

Ms. Curry testified that at the meeting, Owens had indicated that "she would pay $10,000 down" and that "she would . . . later try to get a loan to buy the [P]roperty."  While Owens made the $10,000 down payment, she did not get a loan.  Instead, Owens began making $700 monthly payments to Mr. Curry "for the [P]roperty."[10]  When asked whether it was her understanding that Owens was just supposed to make $700 monthly payments until the remaining balance on the sale of the Property was satisfied, Ms. Curry stated, "No, she was suppose[d] to get a loan[.] Hopefully[,] she was going to get a loan, but it never did happen, so I had to keep accepting the $700."  According to Ms. Curry, Owens did not make a $700 payment every month, stating that Owens had missed "quite a few."  Ms. Curry also stated that she, rather than Owens, had been paying the taxes on the Property.[11]

---

[9]When later asked whether Owens was "a tenant or a purchaser," Ms. Curry stated, "Well, I believe she was a purchaser, and you know I guess I don't [know] what you would call it now.  I know she was purchasing the [P]roperty to buy it."

[10]Payments were initially mailed to Mr. Curry.  After his death, payments were mailed to the law firm representing Ms. Curry.

[11]Ms. Curry stated that Owens "was going to pay" the taxes but that Owens "didn't have the money to pay them."  Because Ms. Curry "couldn't let the [P]roperty go for just the taxes," she "had to pay them."  Evidence was presented at trial indicating that the taxes on the Property for 2020 were $8,578.10—more than the

An affidavit signed by Owens was admitted into evidence at trial. In that affidavit, Owens stated that she had "made many improvements to the [P]roperty and would estimate [she had] spent $65,000 improving the [P]roperty." Receipts purporting to show work done by Owens at the Property were also admitted at trial, although no testimony was offered regarding the receipts. Ms. Curry testified that Owens had "fix[ed] up the [P]roperty," although she did not elaborate on what type of work was done by Owens at the Property. Ms. Curry also indicated that she had not been to the Property "recently," stating that she had last been to the Property "[y]ears ago." She also stated that she was not aware of the condition of the Property at the time of trial. As to the value of the Property at the time of trial, Ms. Curry testified that she believed that $319,000 was a "fair price," although she stated that she did not have any personal knowledge relating to the value of the Property. Toward the conclusion of trial, Owens's attorney stated that the parties had stipulated that "the appraisal value of the [P]roperty . . . is $310,000."

Following trial, the trial court signed a take-nothing judgment against Owens and ordered her to pay attorney's fees in the amount of $10,000 to the Trustee and $7,500 to Ms. Curry. While Owens requested findings of fact and conclusions of law, no findings and conclusions were signed by the trial court, and Owens did not file a notice of past-due findings and conclusions. *See* Tex. R. Civ. P. 297. Owens later

yearly amount that Owens was paying on the Property, even assuming she had made all twelve of the monthly $700 payments for the year.

filed a motion for new trial, contending that "[t]he evidence presented [at trial] does not support a Take[-]Nothing Judgment for the Defendant[s]." That motion was denied by the trial court, and this appeal followed.

### III. DISCUSSION

#### A. Standard of Review

Owens's issues on appeal implicate the sufficiency of the evidence. In a bench trial in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). When a reporter's record is filed, those implied findings are not conclusive, and an appellant may challenge them by raising issues challenging the legal and factual sufficiency of the evidence to support the judgment. *Id.* We apply the same standard when reviewing the sufficiency of the evidence to support implied findings that we use to review the evidentiary sufficiency of jury findings or a trial court's express findings of fact. *Id.* We must affirm the judgment if we can uphold it on any legal theory supported by the record. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766–67 (Tex. 2011).

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn*

*v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

When a party attacks the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Cath. Diocese of El Paso v. Porter*, 622 S.W.3d 824, 834 (Tex. 2021). In reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). If no evidence supports the finding, then we will examine the entire record to determine if the contrary position is established as a matter of law. *Id.* We will sustain the issue only if the contrary position is conclusively established. *Id.* Evidence conclusively establishes a fact when the evidence leaves "no room for ordinary minds to differ as to the conclusion to be drawn from it." *Int'l Bus. Mach. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 235 (Tex. 2019).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

## B. Owens's First Issue

In her first issue, Owens complains that the statute of frauds does not apply to the Contract because Ms. Curry judicially admitted the Contract's contents at trial.

### 1. The Statute of Frauds

The statute of frauds requires that, to be enforceable, contracts for the sale of real estate must be in writing and signed by the person charged with the promise. Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(4). It also requires that the writing be complete within itself in every material detail and that it contain all the essential elements of the agreement so that the contract can be ascertained from the writing without resort to oral testimony. *Dipprey v. Double Diamond, Inc.*, 637 S.W.3d 784, 809 (Tex. App.—Eastland 2021, no pet.); *Petrohawk Props., L.P. v. Jones*, 455 S.W.3d 753, 765 (Tex. App.—Texarkana 2015, pet. dism'd). Additionally, the statute of frauds requires that the writing "contain a sufficient description of the property to be conveyed." *AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008). "A property

11

description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty." *Id.* "A description's validity under the statute of frauds is not affected by the knowledge or intent of the parties." *Fears v. Tex. Bank*, 247 S.W.3d 729, 736 (Tex. App.—Texarkana 2008, pet. denied).

The statute of frauds is an affirmative defense in a breach-of-contract suit and renders a contract that falls within its purview unenforceable. *Hairston v. S. Methodist Univ.*, 441 S.W.3d 327, 333 (Tex. App.—Dallas 2013, pet. denied). The question of whether an agreement falls within the statute of frauds is one of law. *Id.* at 334.

**2. Here, the Statute of Frauds Applies Because the Contract Does Not Contain a Property Description**

Here, the Contract does not contain a property description for the Property, nor does it contain the address of the Property. Indeed, the only description of the Property in the Contract is that it is located at "[Left Blank], City of [Left Blank], State of [Left Blank]: [Left Blank]." Thus, we conclude that the Contract violates the statute of frauds by not containing a property description. *See AIC Mgmt.*, 246 S.W.3d at 645; *Reeder v. Curry*, 426 S.W.3d 352, 360 (Tex. App.—Dallas 2014, no pet.) (holding that property description in contract was inadequate under the statute of frauds because it failed to provide the means or data by which the particular land to be conveyed might be identified with reasonable certainty).

**3. We Reject Owens's Argument that Ms. Curry Made Judicial Admissions at Trial Such that the Statute of Frauds Does Not Apply to the Contract**

Even though the Contract does not contain a property description, Owens nevertheless contends that the statute of frauds does not apply because Ms. Curry judicially admitted at trial that the real property being conveyed through the Contract was located at 4108 Baylor Street in Fort Worth. A judicial admission is a formal waiver of proof that dispenses with the production of evidence on an issue and bars the admitting party from disputing it. *Lee v. Lee*, 43 S.W.3d 636, 641 (Tex. App.—Fort Worth 2001, no pet.). The elements required for a judicial admission are: (1) a statement made during the course of a judicial proceeding; (2) that is contrary to an essential fact or defense asserted by the person making the admission; (3) that is deliberate, clear, and unequivocal; (4) that, if given conclusive effect, would be consistent with public policy; and (5) that is not destructive of the opposing party's theory of recovery. *Id.* at 641–42.

Owens cites only one Texas case, *Menendez v. Texas Commerce Bank, McAllen, N.A.*, 730 S.W.2d 14 (Tex. App.—Corpus Christi 1987, no writ.), for the proposition that a judicial admission can act as an exception to the statute of frauds. In *Menendez*, a defendant was sued as a guarantor of a promissory note. *Id.* at 15. The defendant raised the statute of frauds, arguing that there was no writing evidencing his status as a guarantor of the note. *Id.* at 14. At trial, all evidence was presented by stipulation, including the stipulation that the defendant signed the promissory note in the capacity

13

of a guarantor. *Id.* After the trial court found him liable for the note, the defendant appealed, arguing that "there was no writing evidencing [his status as a guarantor] to comply with the [s]tatute of [f]rauds." *Id.* In rejecting that argument, the court of appeals noted that the defendant had stipulated that he had signed the note in the capacity of guarantor and that a stipulation is generally considered to be a judicial admission. *Id.* at 14–15.

We find *Menendez* to be distinguishable. First, *Menendez* did not involve a real estate transaction, nor did it involve a missing property description in a real estate contract. And Texas law makes clear that with respect to the property description in a real estate contract, extrinsic evidence may not be used to supply the location or description of the property. *Long Trusts v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006) (holding that extrinsic evidence may be used only for the purpose of identifying property with reasonable certainty from data contained in the contract but not for the purpose of supplying the location or description of the property); *Wilson v. Fisher*, 188 S.W.2d 150, 152 (Tex. 1945) ("[R]esort to extrinsic evidence, where proper at all, is not for the purpose of supplying the location or description of the land, but only for the purpose of identifying it with reasonable certainty from the data in the memorandum."); *see also Morrow v. Shotwell*, 477 S.W.2d 538, 540 (Tex. 1972) (holding that even when "[t]he record leaves little doubt that the parties knew and understood what property was intended to be conveyed, . . . the knowledge and intent of the parties will not give validity to the contract . . . and neither will a plat made from

14

extrinsic evidence"). Second, *Menendez* involved a stipulation concerning the subject promissory note; here, the parties did not enter any stipulation regarding the terms of the Contract, nor did they enter any stipulation regarding the description of the property being conveyed through the Contract. *See Menendez*, 730 S.W.2d at 14.

Owens has cited no Texas case, and we have found none, where a judicial admission acted to supply a missing property description from a real estate contract so that the statute of frauds did not apply to the contract. We thus reject Owens's argument that Ms. Curry made judicial admissions at trial such that the statute of frauds does not apply to the Contract. *See Long Trusts*, 222 S.W.3d at 416; *Wilson*, 188 S.W.2d at 152; *Morrow*, 477 S.W.2d at 540.

Moreover, even if Ms. Curry's testimony could have acted as a judicial admission such that the statute of frauds did not apply to the Contract, the trial court had other evidence before it through which it could have rejected Owens's breach of contract claim. To that end, to prevail on a breach of contract claim, a plaintiff must prove: (1) the existence of a valid contract, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff sustained damages as a result of the defendant's breach. *Wood Care Ctrs., Inc. v. Evangel Temple Assembly of God of Wichita Falls, Tex.*, 307 S.W.3d 816, 824 (Tex. App.—Fort Worth 2010, pet. denied). And, here, the evidence established that Owens did not pay the "Total Purchase Price" of $150,000, nor did she "arrange suitable financing . . . at least thirty (30) days prior to the closing" as required by the Contract. Thus, the trial

15

court could have rejected Owens's breach of contract claim because she had failed to perform under the Contract. *See Rosemond*, 331 S.W.3d at 766 ("In the absence of findings of fact or conclusions of law, a trial court's judgment will be upheld on any theory supported by the record."). We overrule Owens's first issue.

## C. Owens's Second Issue

In her second issue, Owens complains that even if the Contract does not satisfy the statute of frauds, it is nevertheless enforceable under the partial performance exception to the statute of frauds.

### 1. The Partial Performance Exception to the Statute of Frauds

Partial performance is an exception to the statute of frauds. *Thomas v. Miller*, 500 S.W.3d 601, 609 (Tex. App.—Texarkana 2016, no pet.). Under the partial performance exception, contracts that have been partially performed but that do not meet the requirements of the statute of frauds may be enforced in equity if denial of enforcement would amount to a virtual fraud. *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 160 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The partial performance must be "unequivocally referable" to the agreement and corroborative of the fact that a contract actually was made. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 426 (Tex. 2015) (emphasis removed); *Duradril, L.L.C.*, 516 S.W.3d at 161. "The acts of performance relied upon to take a parol contract out of the statute of frauds must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced." *Exxon Corp. v.*

16

*Breezevale Ltd.*, 82 S.W.3d 429, 439–40 (Tex. App.—Dallas 2002, pet. denied). "[O]therwise, they do not tend to prove the existence of the parol agreement relied upon." *Id.* at 440.

To establish the partial performance exception, a party must prove: (1) payment of the consideration, whether it be in money or services; (2) possession by the vendee; and (3) the making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor—or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. *In re Est. of Banta*, No. 02-21-00327-CV, 2022 WL 2526940, at *5 (Tex. App.—Fort Worth July 7, 2022, pet. denied) (mem. op.); *Aguirre v. Pompa*, No. 11-14-00168-CV, 2016 WL 2974817, at *2 (Tex. App.—Eastland May 19, 2016, no pet.) (mem. op.); *see Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 426 n.2. Whether the partial performance exception applies is a question of fact. *Burrus v. Reyes*, 516 S.W.3d 170, 182 (Tex. App.—El Paso 2017, pet. denied); *see Hairston*, 441 S.W.3d at 334 (holding that "the question of whether an exception to the statute of frauds applies is generally a question of fact").

### 2. Did Owens Waive Her Argument Relating to the Partial Performance Exception?

Before we address the evidence relating to Owens's partial performance exception, we must first address whether Owens has waived her argument relating to the exception. The party seeking to avoid the statute of frauds based on an

exception—including the exception of partial performance—must plead, prove, and secure findings on the exception. *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013); *Wood v. Wiggins*, 650 S.W.3d 533, 553 (Tex. App.—Houston [1st Dist.] 2021, pet. denied). If a party fails to plead, prove, and secure findings on the exception, the party has waived any complaint regarding it. *See Wood*, 650 S.W.3d at 554 (holding that appellant waived argument regarding partial performance exception by failing to plead it, try it by consent, or secure a finding as to the exception); *Parks v. Landfill Mktg. Consultants, Inc.*, No. 14-02-01243-CV, 2004 WL 1351545, at *5 (Tex. App.—Houston [14th Dist.] June 17, 2004, pet. denied) (mem. op.) (holding that because appellees did not plead partial performance exception or try it by consent, they waived their argument relating to the exception).

Owens claims that she pled the partial performance exception, pointing to language in the "Facts" section of her live petition in which she discussed making payments on the Contract, using and possessing the Property, and making improvements to the Property. Having read that petition, we do not think that it gives the Trustee and Ms. Curry fair notice that Owens raised the partial performance exception. *See Taylor v. Taylor*, 337 S.W.3d 398, 401 (Tex. App.—Fort Worth 2011, no pet.) (op. on reh'g) ("Generally, a pleading provides fair notice of a claim when an opposing attorney of reasonable competence can examine the pleadings and ascertain the nature and basic issues of the controversy and the relevant testimony."). That petition does not reference the partial performance exception, nor does it reference

18

the statute of frauds. While it does mention certain facts that may be relevant to the partial performance exception, those facts are also relevant to Owens's other claims.[12]

Owens also contends that even if she did not plead the partial performance exception, the exception was nevertheless tried by consent. An issue is tried by consent if it clearly appears from the whole record that the parties tried out a controverted issue and that the issue was fully developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint. *Landers v. Landers*, No. 02-19-00303-CV, 2021 WL 1570011, at *7 n.27 (Tex. App.—Fort Worth Apr. 22, 2021, no pet.) (mem. op.); *In re W.M.R.*, No. 02-11-00283-CV, 2012 WL 5356275, at *12 (Tex. App.—Fort Worth Nov. 1, 2012, no pet.) (mem. op.). "Trial by implied consent is limited in application to exceptional cases." *Jackson v. Kisiah*, No. 02-12-00371-CV, 2013 WL 3064517, at *2 (Tex. App.—Fort Worth June 20, 2013, no pet.) (mem. op.). "It is not intended to establish a general rule of practice; it should be applied with care and never in a doubtful situation." *Id.*

To support her argument that the partial performance exception was tried by consent, Owens points to the following statement made by her attorney during her opening statement:

[12]The facts relating to her payments on the Contract were relevant to her breach of contract claim, the facts relating to her use and possession of the Property were relevant to her requests for declaratory relief, and the facts relating to her improvements made to the Property were relevant to her unjust enrichment claim.

> Unjust enrichment is the cause of action in which – if the parties can't prove through a contract or some sort of an agreement but they have acted, and in this case it's classic. They have acted. My client has improved the [P]roperty, made payments, and the value has increased during the timeline that my clients exercised their rights of ownership.
>
> And if they get it back now for just $700 a month rent, that's unfair, that's unjust enrichment.

But nothing from that statement—or from anything else in the record—gives a clear indication that all parties understood that they were trying the issue of Owens's partial performance exception to the statute of frauds. *See Landers*, 2021 WL 1570011, at *7 n.27; *W.M.R.*, 2012 WL 5356275, at *12. To that end, the partial performance exception was never mentioned at trial, and the statement made by Owens's counsel during opening statements clearly referred to Owens's unjust enrichment claim—not the partial performance exception. *See Parks*, 2004 WL 1351545, at *5 (holding that issue of partial performance exception was not tried by consent where evidence of partial performance was also relevant to pled breach of contract claim).

Thus, because Owens did not plead the partial performance exception, nor was it tried by consent, she has waived her argument relating to the exception.[13] *See Dynegy, Inc.*, 422 S.W.3d at 641; *Wood*, 650 S.W.3d at 553; *Parks*, 2004 WL 1351545, at *5.

---

[13]We also note that Owens failed to secure findings relating to the partial performance exception. *See Wood*, 650 S.W.3d at 554 (holding that appellant waived argument relating to partial performance exception where he did not "secure a finding of fact or conclusion of law from the trial court as to the exception").

20

### 3. Even if Owens Did Not Waive Her Argument Relating to the Partial Performance Exception, She Did Not Prove the Exception

Even if Owens did not waive her argument relating to the partial performance exception, she did not prove the exception. As noted above, to prove the partial performance exception, a party must prove, among other elements, that the vendee made valuable and permanent improvements upon the land *with the consent of the vendor*—or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. *See Banta*, 2022 WL 2526940, at *5. In her brief, Owens claims that she proved this element by presenting evidence that she had "made over $62,000 worth of valuable improvements to the [P]roperty." But while there may have been some evidence in the record that Owens had made valuable improvements to the Property, there was no evidence in the record that Mr. Curry, Ms. Curry, or the Trustee had consented to the improvements. We thus overrule Owens's second issue.[14] *See id.* ("[W]e cannot say that the trial court's rejection of the partial performance exception was contrary to the overwhelming weight of the evidence" where the expenses submitted by the appellant did not constitute "*conclusive* proof [of] the partial performance exception.").

---

[14]Moreover, as noted in our discussion of Owens's first issue, the trial court could have rejected Owens's breach of contract claim based on reasons other than the statute of frauds—namely, that Owens had failed to perform under the Contract.

**D. Owens's Third Issue**

In her third issue, Owens complains that the trial court erred by entering judgment against her "because the record is completely void of any evidence showing that Owens became a tenant-at-will, allowing [the Trustee and Ms. Curry] to institute eviction proceedings against her." Owens's complaint is centered around the following statement made by the Trustee in the forcible detainer action: "At the time [Barbara] Owens moved into the Property, the duration of [Barbara] Owens'[s] tenancy was never determined or specified. As a result, a tenancy at will was created between [Trustee] and [Barbara] Owens." According to Owens, "This statement was categorically false when made. Owens remained what she always was: a buyer under a valid contract for deed."

As a preliminary matter, we note that the trial court did not make any findings with respect to whether Owens or her mother, Barbara Owens, was a tenant-at-will of the Property. Nor did the trial court make any findings with respect to the propriety of the forcible detainer action. To the extent that Owens's third issue can be read as asking us to make such findings, we decline to do so, as that would be asking us to render an advisory opinion. *See McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 232 (Tex. 2001) (holding that courts have no jurisdiction to issue advisory opinions); *In re H.B.*, No. 2-06-102-CV, 2006 WL 3438193, at *2 (Tex. App.—Fort Worth Nov. 30, 2006, no pet.) (op. on reh'g) (mem. op.) ("Courts are not authorized to render advisory opinions on issues not necessary to a disposition of an appeal.").

22

Liberally construing this issue, it appears to attack the trial court's ruling on Owens's common law fraud claim.[15] To prevail on a claim of common law fraud, a plaintiff must establish (1) a material representation, (2) that is false, (3) that was either known to be false when made or was made recklessly without knowledge of its truth, (4) with the intent that the representation be relied upon, (5) that it was relied upon, and (6) that caused injury. *Profitlive P'ship v. Surber*, 248 S.W.3d 259, 261 (Tex. App.— Fort Worth 2007, no pet.). Here, there is no evidence to establish that the Trustee and Ms. Curry made a material representation to Owens that was false—the complained of representation was made by the Trustee in an action against Owens's mother, not an action against Owens. Moreover, Owens has not offered any explanation in her brief for how she relied upon that statement to her detriment, and we have found no evidence in the record in support of that argument. Thus, the trial court could have rejected Owens's common law fraud claim without deciding whether Owens was a tenant-at-will. *See id.* We thus overrule her third issue. *See Rosemond*, 331 S.W.3d at 766.

### E. Owens's Fourth Issue

In her fourth issue, Owens complains that she was entitled to compensation under the equitable theory of unjust enrichment.

---

[15]With respect to that claim, Owens alleged that the Trustee "attempted to conceal the ownership interest of [Owens] and filed a lawsuit asserting . . . [Owens's] interest was only that of a tenant at will . . . when in fact he had in his possession the contract entered into between [Owens] and [Mr. Curry]."

### 1. Applicable Law

Unjust enrichment is not a stand-alone cause of action; rather, it is an implied-contract, equitable measure of damages that addresses a failure to make restitution for benefits wrongfully received. *Skeels v. Suder*, No. 02-18-00112-CV, 2021 WL 4785782, at \*19 (Tex. App.—Fort Worth Oct. 14, 2021, pet. granted) (op. on reh'g) (mem. op.). A party may recover under an unjust enrichment theory if one party has obtained a benefit from another by fraud, duress, or by taking unfair advantage of another. *Id.* Although a claim may be styled as an unjust enrichment claim, it may fall "under the umbrella of quantum meruit, money had and received, or the like, [which] provides an independent legal basis for recovery." *Id.*

### 2. Did the Trial Court Err in Ruling that Owens Should Take Nothing on Her Unjust Enrichment Claim?

The central thrust of Owens's unjust enrichment claim is that "it would be manifestly unjust" to allow the Trustee and Ms. Curry to benefit from the increase in the Property's value caused by the improvements made by her to the Property. While recognizing that unjust enrichment is not a stand-alone cause of action, Owens contends that "it is clear that [she] pleaded equitable relief for unjust enrichment under a theory of quantum meruit or quasi contract."

The elements of a quantum meruit claim are (1) valuable services or materials were furnished, (2) to the parties sought to be charged, (3) which were accepted by the parties sought to be charged, and (4) under circumstances that reasonably notified

24

the recipient that the complaining party, in performing, expected to be paid by the recipient. *Kitchen v. Frusher*, 181 S.W.3d 467, 477 n.6 (Tex. App.—Fort Worth 2005, no pet.) (op. on reh'g). A quasi contract is a legal fiction, an obligation imposed by law regardless of any actual agreement between the parties. *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.). It allows for the recovery of damages to prevent a party from obtaining a benefit from another by fraud, duress, unjust enrichment, or because of an undue advantage. *Id.*

Having reviewed the record, we hold that the trial court did not err by ruling that Owens take nothing on her unjust enrichment claim. In this regard, the evidence relating to the improvements was scant. It consisted of one sentence in Owens's affidavit estimating that she had spent $65,000 improving the Property, some receipts purporting to show work done on the Property but that no party testified about, and a stray statement by Ms. Curry that Owens had "fix[ed] up the [P]roperty." There was no evidence presented to indicate that Mr. Curry, Ms. Curry, or the Trustee had accepted the improvements under circumstances that reasonably notified them that Owens expected to be paid regarding the improvements. *See Kitchen*, 181 S.W.3d at 477 n.6.

Moreover, there was no evidence presented to indicate that the improvements increased the value of the Property. *See Sharp v. Stacy*, 535 S.W.2d 345, 351 (Tex. 1976) ("The principle is well established in equity that a person who in good faith makes improvements upon property owned by another is entitled to compensation

25

therefor. The measure of compensation to the claimant is not the original cost of the improvements, but the enhancement in value of the land by reason of the improvements."). To that end, while some evidence was presented indicating that the value of the Property had increased between the date of the Contract and the time of trial, there was no evidence presented to tie the increase in the value of the Property to the improvements purportedly made by Owens. Finally, given that Ms. Curry continued to pay the taxes on the Property—and given that the 2020 taxes were more than the amount paid by Owens for that year on the Property—the trial court could have properly rejected Owens's unjust enrichment claim. We overrule Owens's fourth issue.

## F. Owens's Fifth Issue

In her fifth issue, Owens complains that the attorney's fees awarded to the Trustee and Ms. Curry are not supported by sufficient evidence.

### 1. Applicable Law

To recover attorney's fees, the prevailing party must prove that (1) legal authority permits the recovery of attorney's fees, and (2) the requested attorney's fees are reasonable and necessary. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 490 (Tex. 2019). Whether an award of attorney's fees is reasonable is a question of fact; we review the reasonableness of the amount of the attorney's fees awarded for sufficiency of the evidence. *Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 513 (Tex. App.—Fort Worth 2011, pet. denied). When evaluating the

26

reasonableness of an attorney's fee, a court should consider the *Arthur Andersen* factors, including: (1) the time and labor required, the difficulty of the legal issue, and the skill required; (2) the likelihood that accepting the employment will preclude the attorney from other employment; (3) the fee customarily charged for similar services; (4) the amount involved and the results; (5) the time limitations; (6) the nature and length of the relationship with the client; (7) the experience, reputation, and ability of the lawyer; and (8) whether the fee is fixed or contingent. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.3d 812, 818 (Tex. 1997). While these factors are instructive, evidence for each factor is not required to decide reasonableness. *Sundance Minerals, L.P.*, 354 S.W.3d at 514.

"To support the requested amount of attorney's fees, parties frequently rely on the testimony or affidavit of the attorney of record." *Bishara v. Tex. Health Harris Methodist Hosp. Fort Worth Inc.*, No. 02-20-00316-CV, 2021 WL 3085748, at *6 (Tex. App.—Fort Worth July 22, 2021, no pet.) (mem. op.). "[C]ursory testimony or a conclusory affidavit is not sufficient evidence to support the award's amount, even though it is 'enough [evidence] to present the issue to the court.'" *Id.* (quoting *Rohrmoos*, 578 S.W.3d at 497).

### 2. Is There Sufficient Evidence as to the Reasonableness and Necessity of the Trustee's and Ms. Curry's Attorney's Fees?

Owens argues that the evidence is insufficient to support the attorney's fees awarded to the Trustee and Ms. Curry. The Trustee and Ms. Curry counter by

27

arguing that "the parties at trial stipulated that [the Trustee and Ms. Curry] had incurred reasonable and necessary attorney's fees in amounts that exceed[ed] the sums ultimately awarded." The Trustee and Ms. Curry point to the following exchange as evidence of the purported stipulation:

> [Trustee's attorney]: Your Honor, we've discussed and had some stipulations to read into the record, and counsel can correct me . . . . We have stipulated on attorneys' fees. These are not necessarily stipulations that these amounts should be awarded, but that the testimony that we would present on the fees would be as follows for [Owens's attorney]. His testimony would be that his fee is a total of $15,000 plus $1,829 in costs. [Ms. Curry's attorney's] fee testimony would be –

> [Trial Court]: How much for Plaintiff, $15,000 and cost for $1,829?

> [Trustee's attorney]: Yes, and for [Ms. Curry's attorney's] fees on behalf of Ms. Curry, his testimony would be that he had incurred reasonable necessary fees of $15,000.

> [Trial Court]: Okay.

> [Trustee's attorney]: For my fees . . . on behalf of the Curry Trust, we have incurred . . . $23,500.

> [Trial Court]: What's the billing rate in Smith County?[16]

> [Trustee's attorney]: For what I'm charging here is 315. I see guys charge 325, 350.

The Trustee's attorney then read some additional "stipulations" into the record that did not pertain to attorney's fees. Notably, Owens's attorney said nothing on the record to indicate that he agreed to the "stipulation" concerning attorney's fees.

---

[16]The Trustee's trial attorney was based out of Smith County.

28

"A stipulation is 'an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto.'" *Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex. 1998) (quoting *Ortega-Carter v. Am. Int'l Adjustment*, 834 S.W.2d 439, 441–42 (Tex. App.—Dallas 1992, writ denied)). A stipulation is not enforceable unless it is in writing, signed and filed with papers as part of the record, or unless it is made in open court and entered of record. Tex. R. Civ. P. 11; *Foote v. Texcel Expl., Inc.*, 640 S.W.3d 574, 585 (Tex. App.—Eastland 2022, no pet.). In construing a stipulation, we must determine the intentions of the parties from the language used in the entire agreement examining the surrounding circumstances. *Humble Surgical Hosp., LLC v. Davis*, 542 S.W.3d 12, 19 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). However, a stipulation should not be given greater effect than the parties intended. *Id.*

We begin our analysis of this purported stipulation by pointing out that Owens's attorney never voiced any agreement to the purported stipulation. Rather, the Trustee's attorney stated that he "had some stipulations to read into the record" and that "counsel [could] correct [him]." Putting aside the issue of whether an attorney's silence binds him to an alleged stipulation that is read into the record by opposing counsel, we hold that the purported stipulation does not constitute sufficient evidence as to the reasonableness and necessity of Ms. Curry's and the Trustee's attorney's fees.

29

As to Ms. Curry's attorney's fees, the only evidence offered at trial was the purported stipulation set forth above. That purported stipulation stated that Ms. Curry's attorney's "testimony would be that he had incurred reasonable and necessary fees of $15,000." But just because the parties may have stipulated that Ms. Curry's attorney would have testified that his reasonable and necessary fees totaled $15,000 does not mean that they stipulated that those fees were reasonable and necessary.[17] *See Super Marble, Inc. v. Gentry*, No. 01-96-00952-CV, 1998 WL 821335, at *3 (Tex. App.—Houston [1st Dist.] Nov. 25, 1998, no pet.) (not designated for publication) (finding that "the parties did not stipulate to the reasonableness of their attorney's fees" where they left the issue of reasonableness to the trial court's discretion). Moreover, such cursory testimony would be insufficient to support an award of attorney's fees. *See Bishara*, 2021 WL 3085748, at *6–7 (holding that evidence was insufficient to support attorney's-fees award where there was "little to no basis for the court to effectively evaluate whether the requested attorney's fees [were] reasonable considering the legal work performed"); *Eason v. Deering*, No. 02-19-00310-CV, 2020 WL 7062687, at *8 (Tex. App.—Fort Worth Dec. 3, 2020, no pet.) (mem. op.) (holding that evidence was insufficient to support attorney's-fees award where counsel merely testified to the aggregate amount of his fees and the general tasks he carried

---

[17]This is particularly true because the purported stipulation indicated that "[t]hese are not necessarily stipulations that these amounts should be awarded."

out but failed to provide any detail about the work done, how much time was spent on tasks, and how he arrived at the requested fee amount).

As to the Trustee's attorney's fees, the evidence offered at trial was the purported stipulation set forth above and billing statements from the law firm representing the Trustee. The purported stipulation merely reflected that the Trustee had incurred $23,500 in attorney's fees and that the billing rate charged by the Trustee's attorney was less than what some other attorneys charged in Smith County. There was no evidence offered, however, regarding whether the fees incurred by the Trustee were reasonable and necessary. Absent that, the evidence is insufficient to support the award of attorney's fees to the Trustee. *See Rohrmoos Venture*, 578 S.W.3d at 490.

Having determined that there is insufficient evidence to support the attorney's fees awarded to Ms. Curry and the Trustee, we sustain Owens's fifth issue and remand the awards of attorney's fees to the trial court. *See Shouldice v. Van Hamersveld*, No. 09-20-00250-CV, 2023 WL 2027830, at *4 (Tex. App.—Beaumont Feb. 16, 2023, no pet.) (mem. op.) ("When a party seeking to recover attorney's fees presents evidence that isn't sufficiently detailed to prove the fees were reasonable and necessary under a statute authorizing attorney's fees to be awarded, the proper remedy is a remand and not a rendition of the award."); *Bishara*, 2021 WL 3085748, at *7 (reversing trial court's judgment as to the amount of attorney's fees awarded and remanding that

31

issue to the trial court to determine the reasonableness and necessity of the attorney's fees incurred).

## IV. CONCLUSION

Having overruled Owens's first through fourth issues, but having sustained her fifth issue, we affirm the trial court's take-nothing judgment except as to the awards of attorney's fees. We reverse the trial court's awards of attorney's fees and remand them to the trial court for further proceedings consistent with this opinion.

/s/ Dana Womack

Dana Womack
Justice

Delivered: April 20, 2023